Case No. 14-1284, at all, Durham School Services, LP petitioner v. National Labor Relations Board, Ms. Sonneborn for the petitioner, Mr. Jost for the respondent. Good morning, Your Honor. May it please the Court, my name is Amanda Sonneborn and I'm here on behalf of Durham School Services. This is a case that arises out of an NLRB election and it's a somewhat unique set of circumstances in that we have no record in terms of a hearing or transcript or any evidentiary perspective to present to you. And that's because the regional director in this particular instance, following a board election, denied the petitioner's request for a hearing, an evidentiary hearing on the evidence that I presented. In terms of a brief factual background, there was an NLRB election at Durham School Services and at a number of facilities in Florida. Following that election, the petitioner filed two, three objections to that election, two of which we're arguing about here today. During those objections and at the issue that's particularly important from purposes of the union's conduct in the case, there were two issues that were raised. One of them related to the circulation of a flyer by the union the day before the election which contained on it the image of the company's election observer. And on that flyer, it indicated that the individual supported the union and was supporting the union's position there. Following the receipt of that flyer, which like I said, came out only the day before the election, the individual notified the company that she had not in fact consented directly to the placement of her picture on that flyer and had not made the representations that it contained on that flyer. Based on that position alone, the company went forward to the regional director and argued that that conduct by the union, which clearly raised a question about whether or not the individual consented to her picture being placed on this flyer that the union circulated, which was particularly important given that she was the company's election observer at the election, gave rise to objectionable conduct that called into question the results of the election which the union had won. The company, in support of its position, had provided the regional director with an affidavit signed by that individual indicating that she had not expressly authorized the use of her likeness in that way, that she had also not articulated her support openly for the union and in fact had not wanted to do so. The regional director then, in considering the objections to the case, ultimately dismissed outright the statements of her and instead credited evidence submitted by the union in response to the objections submitted by the employer. And in doing so, the regional director denied the employer the right, and the petitioner here the right, to submit or offer evidence in contrary. Essentially, the regional director resolved that credibility dispute between the union's evidence in which it contended that the employer's representative had in fact authorized the use of her likeness. And instead of giving an opportunity to have a hearing where evidence was heard, the position of Ms. Perez, who was the individual who appeared on the flyer, was heard. The regional director resolved that credibility dispute on the documents alone. That's expressly prohibited by case law and, quite frankly, by logic. The board should not be in a position of resolving those kind of credibility disputes between one offered position by the employer and another offered position by the union on the papers alone. There's a longstanding... Even the dissent is not contesting that Midland applies. The dissent just wants a different rule. Your Honor, the dissent, I think, raises some very important issues. But the dissent agrees. Midland applies here, and the board applied Midland. And in many cases, the board has applied Midland in circumstances such as this and given rise to... Let me make sure you understand. You did not raise... They're different questions here. The right to cast the secret ballot is arguably a right. That is not what you were arguing. You try and argue it here, but that was not what was raised in your exception. I understand your position, Your Honor. But the basis, even under Midland, even under the Midland standard, there have been numerous cases such as this where the board has gone forward and ordered a hearing. Whether or not the conduct, in fact, constituted objectionable conduct under the Midland standard, there are certainly enough circumstances here and in many other analogous situations where the board has awarded that evidentiary hearing to make that decision. The board doesn't have to have an evidentiary hearing in all cases. And the board's position, the board took an alternative approach here. And on their alternative, there was nothing to hear. Your Honor, given the factual disputes between the evidence submitted by the union and the evidence submitted by the company, there was sufficient grounds to give rise to a hearing. What do you expect the board to raise an issue under Midland? Given that she had stated that she expressly did not sign the document as indicated by the union in the flyer that they circulated... Why is that an issue under Midland? Because under Midland here, many of the cases cited by the board and relied on the regional director do not involve circumstances where the individual's likeness is put on it. Those that analyze even under the Midland standard where the individual's likeness is put on it are subject to additional factors and considerations above the sort of general Midland standard in which the court and the board often will just, in many circumstances, allow the electioneering to go forward without consideration under that standard. I just don't see how you get out from the Midland box to a straightforward application. Your exceptions didn't raise the more interesting question that looms there. And you're artfully trying to get it to us, but it wasn't raised below. And you knew exactly what you were doing, and I knew exactly what you were doing, but it's not here. So you stuck with the limited Midland question, and the board followed the law. And, Your Honor, even under the Midland standard, we would submit that this should have given rise because of the contradictory evidence and the fact that the board itself, under its own rules, has held that they're not allowed to resolve those kind of credibility disputes without a full hearing, even under Midland. I thought what the board said was even if you take everything to be true, alleged to be true, there's just no claim or evidence of forgery, and that's Midland. And if there's no claim or evidence of forgery, then it just doesn't, this credibility issue that you're alluding to doesn't matter. Your Honor, we would actually argue there is evidence of forgery here, and the fact to the extent that what the union identified and what the board relied on was a claim that she had signed in total four documents. Her affidavit indicated she'd only signed two documents. The board relied upon that. The regional director relied upon that finding that she had signed additional documents. But I never thought that the, I'm not aware of any, maybe you can point me to some case, where forgery in an underlying document is what's at issue, because I thought the question under Midland is whether the propaganda is forged. And that's not the argument you're making now. You're talking about forgery in some underlying document, and I hadn't seen any case in which that was treated as a Midland problem. Correct, Your Honor. But in terms of analyzing the totality of the circumstances which the regional director relied upon in this particular circumstance to find that in fact the additional documents were relevant, the board there relied on those documents in reaching that conclusion. So in order to analyze the regional director's decision, they obviously considered that information as relevant in reaching the determination that a hearing wasn't appropriate. So you have to look at those additional documents beyond the one particular one that has the likeness on it in order to reach that conclusion, given that the regional director relied on it in reaching her conclusion that a hearing was not appropriate. But you don't have to look at it under Midland, because Midland talks about the document in which the pictures exist. The question is whether that's a forgery. In Midland, Your Honor, they talk about the entirety of the circumstances from a misrepresentation perspective. It doesn't actually involve a likeness in that particular case. It's more of the standard setting bar for which cases in which instances where the board will look beyond the language of what's on an actual campaign propaganda. So Midland didn't involve a case of likeness at all. There was no allegation in that case relating to that specific issue. It's an additional facet here. Enterprise did? I'm sorry, Your Honor? Enterprise did? You're correct, Your Honor. With that, I'd like to reserve the rest of my time for rebuttal. All right. Thank you. May it please the Court, my name is Micah Jost for the NLRB. I'd like to begin by emphasizing that the board did not, in fact, resolve credibility or make any credibility determinations. At Joint Appendix 138, excuse me, 139, the board assumed to be true Perez's representation that she did not support the union, and the board nonetheless found that this was a misrepresentation within the scope of the entire line of Midland cases which we cited. None of those cases have ever found the kind of flyer alleged here to be objectionable, either by the board or by this Court. The exceptions that the company presented to the board did not argue for a new categorical standard. Rather, they tried to argue the facts, and the facts do not support them. I also want to emphasize that alleged forgeries in some sort of underlying document or even on the face of the document itself do not render the document itself, here a flyer, to be a forgery. That's the teaching of both this Court's decision in U-Haul and the board's decision in Champaign Residential Services. In both of those cases, it was alleged that there was a forgery on the face of a petition which contained a number of people's signatures, and that document said, we're voting yes, or we support the union. And the board said the fact that there may be forged signatures, a few forged signatures, misrepresenting the extent of the union's support, that fact doesn't prevent employees from seeing this is a union document, this is union propaganda, and we can treat it as such. Perez's affidavit makes clear that even she recognized that that's exactly what was at issue here. At Joint Appendix 49, she stated in her affidavit that the flyer was, quote, trying to give other employees the impression that a lot of employees supported the union. That's exactly right. Everyone could see that that's what it did. Returning to the actual facts or developing further the facts that were actually alleged here or supported by evidence in the affidavits, the employer offered to prove that one employee, April Perez, one of at least three election observers for the company spread across the three election locations, they alleged that she gave a union representative permission to photograph her, signed a form that the union rep gave her without reading it, and then the union used that photograph along with approximately 80 other employees in a unit of approximately 200 employees, giving the impression that she supported the union along with the others. The affidavit from another employee, Heidi Gurley, states that an unspecified number of employees discussed the fact that Perez was on this flyer and what they said is entirely unspecified. Turning to the actual objections that the company made, they objected to a misrepresentation. If you look at Joint Appendix 16 and 17, their objections claim that the union attempted to deceive by using a misrepresentation about employees' support for the union and that it is that failure to fairly represent the quoted employee's views that represents a violation here. That is completely contrary to the unbroken chain of cases. In not holding a hearing here and resolving this case based on the inadequate facts and the clear law, the board did not depart from precedent, as the company claims. Rather, it applied its longstanding precedent. There is nothing in the employer's proffer which would justify departing from that case here. Certainly there is no basis for departing based on principles that have been discussed in the Enterprise case and rejected as a basis for going further. The court doesn't have to address the more academic or esoteric arguments about what exactly constitutes a prima facie case, but I want to note that under amalgamated clothing workers, this court's decision, it is clear that the company's burden was to produce specific evidence which prima facie would warrant setting aside the election. There is also language in the swing staging case about quoting from the board's regulations, which refer to a substantial and material issue of fact. And I'd like to note that the Clearwater Transport case from the Seventh Circuit provides what I think is the clearest explanation of the interaction between those two standards. The court there explained that material issues of fact only exist where the objecting party presents facts that are sufficient to support a prima facie showing of misconduct sufficient to set aside the election. So that's how you raise a fact that gets you a hearing before the board, and that hearing is intended to resolve matters of credibility and falsity. The other side is lurking around something that wasn't raised before, and that is whether employees have a right to remain silent about their vote and avoid an allegating enterprise that's fooled around with that issue. But that's not what was raised below, is your point? I think that's right. So we're right squarely in Midland. We're exactly squarely in Midland, and the company hasn't properly preserved any legal argument for departing, and it hasn't presented any facts that could possibly justify doing so. I would be happy to discuss the company's second objection if there are any questions along those lines. But if the court has no further questions, then for the reasons set forth in our brief, we would ask for enforcement in full. All right. Thank you. Thank you. Counsel did have a minute remaining. Just very quickly, Your Honor. I think that the basis for overturning the election based on the first objection were clear enough to warrant the petitioner receiving a hearing in this case. And really what we're talking about here is not whether or not the conduct presented was sufficient to actually constitute objectionable conduct, because that's not what we're required to show. The question is whether or not it was sufficient to get a hearing and have a board hearing. And the conduct presented in the affidavit submitted by Ms. Perez was more than sufficient to get that hearing. If there are no further questions. Thank you. No further questions. Thank you. The case will be submitted.
judges: Brown, Srinivasan, Edwards